# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE ) <br> COMPANY, *as subrogee of* PARKWAY ) <br> STORAGE GROUPE, LLC, ) <br>    Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHESAPEAKE HOLDINGS GSG, LLC,[1] ) <br>    Defendant. ) | Civil Action No. 1:21-cv-1103 |

## MEMORANDUM OPINION

At issue in this diversity property dispute alleging breach of a covenant of special warranty under Virginia law is Defendant Chesapeake Holdings CSG, LLC's Motion to Dismiss or for Summary Judgment. Simply put, Plaintiff First American Title Insurance Company alleges that Defendant twice conveyed overlapping plots of land in Stafford County, Virginia to two different grantees through two separate deeds. Defendant first conveyed a portion of its land to RD Group/3, LLC ("RD Group") on December 7, 2015, by a special warranty deed (the "RD Group Deed"). Defendant next conveyed a portion of its land on May 12, 2017, to Parkway Storage Groupe, LLC ("Parkway") by a special warranty deed (the "Parkway Deed"). Plaintiff, as subrogee of Parkway, alleges that the Parkway Deed conveyed land that Defendant had already conveyed to RD Group by the RD Group Deed. Plaintiff alleges that as a result, Parkway suffered $114,527 in damages attributable to the necessity for Parkway to pay for the preparation and filing of a corrective deed. Plaintiff now seeks to recover that amount based on a breach of the covenant of special warranty contained in the Parkway Deed. Defendant raises a number of

---

[1] An error in the case caption attributable to Plaintiff's typographical mistake identifies Defendant as "Chesapeake Holdings *GSG*, LLC," instead of "Chesapeake Holdings *CSG*, LLC." Plaintiff intends to file a motion to correct the misnomer pursuant to Fed. R. Civ. P. 15(a)(2). The caption will be corrected accordingly once this occurs and Defendant responds.

1

arguments in its Motion to Dismiss or for Summary Judgment, which the parties have now fully briefed and argued orally in a telephonic hearing on September 23, 2022. Accordingly, Defendant's motion is now ripe for disposition.

## I.

Plaintiff First American Title Insurance Company is a Nebraska corporation with its principal place of business in California. Plaintiff is the indemnitor and subrogee of Parkway. Plaintiff now brings this action against Defendant Chesapeake Holdings CSG, LLC, a Delaware limited liability company whose sole member is Chesapeake Holdings RE, LLC, also a Delaware limited liability company, whose sole member is Manufacturers and Traders Trust Company, a New York corporation with its principal place of business in New York.

Defendant acquired property located in Stafford County, Virginia (the "Stafford County Property"), a portion of which Defendant first conveyed to RD Group via the RD Group Deed, and then Defendant conveyed a portion of the Stafford County Property to Parkway via the Parkway Deed.

The pertinent facts as alleged by Plaintiff in the Amended Complaint may be stated simply and chronologically as follows.

- In June 2013, Defendant became the fee simple owner of the Stafford County Property, which consisted of roughly 297 acres of land.[2]

- In December 2015, Defendant conveyed a portion of the Stafford County Property to RD Group via the RD Group Deed.

- In May 2017, Defendant conveyed a portion of the Stafford County Property to Parkway via the Parkway Deed, which contained a covenant of special warranty. Plaintiff alleges that the portion of property conveyed by the Parkway Deed (the "Parkway Property") was encompassed by the property Defendant had earlier conveyed to RD Group via the

---

[2] Plaintiff's Amended Complaint does not include a description of the size of the Stafford County Property, but Defendant stated in its Memorandum in Support of its Motion to Dismiss that Defendant acquired approximately 297 acres in 2013. *See* Dkt. 16-7 at 3.

      RD Group Deed.

- In November 2019, Parkway entered into a contract to sell the Parkway Property to a third party, Amazon.[3]

- In January 2020, Amazon notified Parkway that Amazon's title examination disclosed that RD Group was the fee simple owner of the Parkway Property pursuant to the 2015 RD Group Deed. Parkway notified Defendant of the title defect, and Defendant asked RD Group to sign a corrective deed.

- In February 2020, RD Group demanded payment in exchange for executing a corrective deed. Defendant refused to pay RD Group's demand. To avoid defaulting under its contract with Amazon, Parkway paid RD Group's demand for a payment for preparing a corrective deed, and thereafter RD Group executed and delivered a corrective deed releasing RD Group's claim to ownership of the Parkway Property.

- As a result of RD Group's demand for payment and Defendant's refusal to pay, Parkway suffered $114,527.00 in damages.

- Pursuant to a separate agreement between Plaintiff and Parkway, Plaintiff is the indemnitor and subrogee of Parkway.

Defendant contends that, as a threshold issue, Plaintiff has failed adequately to allege a breach of the covenant of special warranty under Virginia law. Thus, at issue now is Defendant's Motion to Dismiss or for Summary Judgment, which is Defendant's second threshold motion in this case. On June 22, 2022, an Order issued granting Defendant's first Motion to Dismiss with leave to Plaintiff to amend (the "June Order"). The June Order concluded that although Plaintiff had plausibly alleged that the Parkway Deed conveyed property that was encompassed by the RD Group Deed, Plaintiff had failed to allege that Defendant or any person claiming by, through, or under Defendant had made any claim or demand regarding the Parkway Property. But because Plaintiff represented at oral argument and in supplemental briefing that RD Group had made a claim of ownership with respect to the Parkway Property in early 2020, the Motion to Dismiss was granted with leave for Plaintiff to file an amended complaint that included the requisite

---

[3] Although the parties do not name Amazon in their briefs, Plaintiff stated at oral argument that the third-party purchaser of the Parkway Property was Amazon.

3

allegation regarding the claim by RD Group and RD Group's demand for payment in exchange for preparing and filing a corrective deed. Plaintiff subsequently amended its complaint in this regard and Defendant, in response, has filed its current Motion to Dismiss or for Summary Judgment.

## II.

Because Plaintiff alleges a breach of the covenant of special warranty, analysis of the parties' dispute properly begins with a brief description of the nature of this covenant in Virginia law. In this regard, Virginia law makes clear that the covenant of special warranty constitutes a promise that the grantor of the property will "warrant and defend such property . . . against the claims and demands of the grantor and all persons claiming or to claim by, through, or under him." Va. Code § 55.1-355. As the Fourth Circuit noted in construing a Maryland statute essentially identical to Virginia Code § 55.1-355, the covenant of special warranty "protects the grantee against any defect in title created by the grantor." *Chicago Title Ins. Co. v. 100 Inv. Ltd. P'ship*, 355 F.3d 759, 761 n.1 (4th Cir. 2004). Virginia law also makes clear that the covenant of special warranty is a limited covenant distinct from other statutory warranties in the Virginia Code.[4] Importantly, the covenant of special warranty in Virginia does not protect against theoretical clouds on the grantee's title; it only protects against "claims and demands" of the grantor or his successors. Va. Code § 55.1-355.

Given that the covenant of special warranty in Virginia consists of a promise to warrant and defend the property against the claims of the grantor and all persons claiming by, through, or under the grantor, it is clear that Plaintiff, in the Amended Complaint, has alleged a plausible

---

[4] For example, the covenant of general warranty guarantees title against the world, and the covenant of the right to convey warrants that the grantor has the right, power, and absolute authority to convey the land. *See* Va. Code §§ 55.1-354, 55.1-359.

4

claim for a breach of the special warranty in the Parkway Deed. Specifically, the Amended Complaint alleges that Defendant, by Defendant's error, conveyed the same portion of property to Parkway as Defendant had previously conveyed to RD Group. Furthermore, the Amended Complaint alleges that Defendant refused to remedy the error when RD Group demanded compensation in return for executing a corrective deed disclaiming RD Group's ownership in the Parkway Property. These allegations adequately state a valid claim for a breach of the covenant of special warranty.

Defendant, in opposition to this conclusion, asserts five arguments in its Motion to Dismiss or for Summary Judgment.

(A) Defendant contends that its motion should be addressed as a motion for summary judgment because no material facts are in dispute;

(B) Defendant contends that Parkway, and hence Plaintiff as Parkway's subrogee, cannot recover against Defendant because Parkway is charged with full knowledge of the title defect for the property Parkway acquired from Defendant;

(C) Defendant contends that the Amended Complaint fails because no person, including Defendant or anybody claiming by, through, or under Defendant, has asserted a claim against the Parkway Property;

(D) Defendant contends that the RD Group Deed did not convey the same property as did the Parkway Deed, and even if the RD Group Deed did so, the reference in the RD Group Deed to the property conveyed by the Parkway Deed was patently erroneous and therefore must be ignored; and

(E) Defendant contends that Plaintiff has no right of subrogation due to various defenses that Defendant could assert against Parkway, Plaintiff's subrogor.

Each of Defendant's arguments is addressed below.

## A.

Defendant first argues that its motion should be addressed as a motion for summary judgment. In support of this argument, Defendant has filed two affidavits and a statement of material facts not in dispute. Thus, Defendant contends there is no genuine dispute that the RD

Group Deed and the Parkway Deed conveyed wholly separate plots of land because the RD Group Deed conveyed "Tax Map Parcel 38-14H," while the Parkway Deed conveyed "Tax Map Parcel 38-14F." Dkt. 16-7 at 15. In support, Defendant attached an affidavit of Carl H. Bivens, an attorney who represented RD Group in its acquisition of that property from Defendant (the "Bivens Affidavit"). The Bivens Affidavit states that RD Group "at all times understood and agreed that it acquired only that parcel of land known as Tax Map Parcel 38-14H." Dkt. 16-8 at 2. Defendant also submitted an affidavit of Richard A. Dubose, III, the attorney who represented Defendant in its transactions with RD Group and Parkway (the "Dubose Affidavit"). The Dubose Affidavit states that the agreement of sale between Defendant and RD Group, as well as the agreement of sale between Defendant and Parkway, both attached a plat depicting the Stafford County Tax Maps. This plat, according to the Dubose Affidavit, "clearly shows" that only Tax Map Parcel 38-14H was conveyed to RD Group. Dkt. 16-9 at 3.

Defendant also contends that there is no genuine dispute that RD Group never asserted an interest in the Parkway Property. In support of this contention, Defendant argues that RD Group's demand for payment was not for the preparation and filing of a corrective deed but reflected a dispute over a sewer easement that did not pertain to the Parkway Property. *See* Dkt. 16-7 at 9; Dkt. 16-8 at 2.

Defendant's argument that its motion should be analyzed as a motion for summary judgment must be rejected. Although district courts have discretion to "convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment," *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007), it is inappropriate to do so where, as here, the parties dispute material facts that require development of a full factual record. Specifically, there are at least two material factual disputes that preclude summary judgment at this stage. First, as the June Order

6

already determined, a full factual record is necessary to ascertain whether the Parkway Deed conveyed land already conveyed by Defendant in the RD Group Deed. *See* Order Issued June 22, 2022, Dkt. 14 at 2. Defendant's affidavits regarding the tax map parcels do not settle this question because Plaintiff disputes that the RD Group Deed only conveyed Tax Map Parcel 38-14H. *See* Dkt. 18 at 4. Plaintiff notes that the RD Group Deed states that the property conveyed by the deed is "more particularly described on Exhibit A," and Exhibit A includes a property description that encompasses the Parkway Property. *See* Dkt. 18 at 5; Dkt. 15-2 at 1. Plaintiff also noted at oral argument that tax map parcels are not filed in the land records, and Stafford County has the discretion to change the boundaries of its tax map parcels at any time at the county's discretion. Thus, as the June Order concluded, Defendant's argument that it did not convey the same piece of property is not appropriately addressed without an evidentiary record regarding, *inter alia*, the plots of land at issue and Stafford County's tax parcel designations.

Second, there is a factual dispute over whether, as Defendant contends, RD Group demanded payment in connection with a dispute over a sewer easement or whether, as Plaintiff contends, RD Group demanded payment because RD Group asserted an ownership interest in the Parkway Property. Although Defendant's affidavits state that RD Group never asserted an ownership interest in the Parkway Property, Plaintiff disputes this fact by alleging in its Amended Complaint that RD Group "asserted its claim to ownership of the Parkway Property" by "demanding payment" for the corrective deed. Dkt. 15 at 4. Plaintiff also attached affidavits stating that Defendant "made it clear" that Defendant would not take action to resolve the title issue, Dkt. 18-1 at 2, and that "at no point" did Defendant "object or take issue with Parkway paying RD Group for the Deed of Correction." Dkt. 18-2 at 2. Thus, at this stage, there are genuine issues of material fact in dispute and it is therefore inappropriate to convert Defendant's

7

motion to dismiss into a motion for summary judgment.

### B.

Defendant next argues that Parkway, and hence Plaintiff as Parkway's subrogee, is barred from recovering in this action because Parkway is charged with full knowledge of the status of the record title to the property that Parkway acquired from Defendant. This argument fails. The Supreme Court of Virginia has made clear that the doctrine of constructive notice "does not apply against a grantee in an action against his immediate grantor for a breach of covenant," because as between the grantor and the grantee of real property, "the grantee is not required to examine the records, but may rely solely on the covenants in his deed for protection even though he ha[s] actual notice of encumbrances." *Bossieux v. Shapiro*, 154 Va. 255, 261 (1930). In other words, "[c]ovenants of warranty dispense with inquiry." *Id.*; *see also Adams v. Seymour*, 191 Va. 372, 380 (1950); *Sterling v. Blackwelder*, 302 F. Supp. 1125, 1130 (E.D. Va. 1968).[5]

Seeking to avoid this conclusion, Defendant argues that a purchaser of property is put on constructive notice of all claims against the property disclosed in the chain of record title, and in any event, Parkway was contractually obligated to search the title records and report any title defects to Defendant prior to Parkway accepting the Parkway Deed. This argument is unpersuasive. To begin with, Defendant cites but one case for this proposition, *Chavis v. Gibbs*, 198 Va. 379, 382 (1956), and that case is inapposite. In *Chavis*, the Supreme Court of Virginia held that a purchaser of real property was not protected by Virginia's recording statute because he was not a purchaser "without notice" where the chain of title revealed that the property had

---

[5] Although *Bossieux*, *Adams*, and *Sterling* did not interpret deeds containing the covenant of special warranty, the principle that a grantee may rely on the covenants in his deeds for protection clearly applies to the covenant of special warranty. Moreover, *Adams* involved a covenant of quiet possession, and the Virginia Supreme Court has treated the covenant of quiet possession "as coextensive with a special warranty." *Fisher v. Va. Elec. and Power Co.*, 258 F. Supp. 2d 445, 449 (E.D. Va. 2003) (citing *Campbell v. Watkins' Ex'rs*, 105 Va. 824, 827 (1906)).

been conveyed subject to a recorded deed of trust. *Id.* Contrary to Defendant's argument, however, *Chavis* did not address whether knowledge of a defect in title negates the warranty of title found in a deed; in fact, Virginia law makes clear that knowledge of such a defect does not negate the warranty of title in a deed, for, as the Supreme Court of Virginia has made clear, "knowledge of the existence of an outstanding encumbrance may be the very reason for insisting on a covenant against it." *Adams*, 191 Va. at 380 (explaining that plaintiff's actual or constructive knowledge of an outstanding claim to the title of the plaintiff's property was "not a sufficient defense" to a suit for breach of covenants in a deed). Thus, Defendant's argument for dismissing Plaintiff's Amended Complaint because Plaintiff had constructive knowledge of the title defect must be rejected.

## C.

Defendant also argues that Plaintiff's Amended Complaint fails to allege, as required by Virginia Code § 55.1-355, that any party claiming by, through, or under Defendant, including RD Group, has asserted a claim of ownership against the Parkway Property. Thus, Defendant claims that the Amended Complaint fails to state a valid claim for breach of the covenant of special warranty in the Parkway Deed because the Amended Complaint does not allege an eviction. Although the parties correctly note that Virginia law requires an eviction to support a claim against a grantor for breaching a covenant of special warranty contained in a deed,[6] the

---

[6] The Virginia Supreme Court has not specifically addressed whether a covenant of *special* warranty requires an eviction, but the case law makes clear that causes of action for the covenant of general warranty and the covenant of quiet possession require an eviction, *see Addington*, 155 Va. at 38 (covenant of general warranty); *Fisher*, 258 F. Supp. 2d at 451 (covenant of quiet possession), and that for purposes of the eviction requirement, those covenants should be treated as "coextensive" with the covenant of special warranty. *Fisher*, 258 F. Supp. 2d at 449 (citing *Campbell v. Watkins' Ex'rs*, 105 Va. 824, 827 (1906)).

parties agree that an actual eviction is not required and a constructive eviction suffices.[7]

Defendant is mistaken in contending that the Amended Complaint fails to state a valid claim for breach of the covenant of special warranty, as the Amended Complaint states facts constituting a constructive eviction. Specifically, the Amended Complaint states that (1) RD Group had a paramount claim to the Parkway Property pursuant to the RD Group Deed, (2) RD Group demanded payment as a precondition to executing a corrective deed, and (3) Defendant refused to pay RD Group's demand. Dkt. 15 at 3–4. Accepting these facts in the Amended Complaint as true, Plaintiff has plausibly alleged that a constructive eviction occurred when RD Group refused to correct its deed to exclude the Parkway Property unless RD Group received payment. Requiring payment to disclaim an ownership in property clearly constitutes a "demand" as required for a claim of breach of the covenant of special warranty. *See* Va. Code § 55.1-355. Therefore, the Amended Complaint alleges facts indicating that a constructive eviction occurred to support the claim for a breach of the covenant of special warranty.

Seeking to avoid this conclusion, Defendant argues that RD Group's refusal to execute the confirmatory deed unless it was paid money did not constitute a constructive eviction because it did not "deprive or evict Parkway from possession of its property." Dkt. 19 at 5. Although the parties have not identified a Virginia case addressing whether a constructive eviction occurred under similar circumstances as those at issue here—that is, where a grantor refused to pay a third party in order to correct a defect in the plaintiff's title created by the

---

[7] *See, e.g.*, *Tull v. Fleming Bros. Lumber & Mfg. Co.*, 189 Va. 171, 181 (1949) (holding that a breach of a covenant of warranty occurred where "there was a constructive eviction of the covenantee"); *Morgan v. Haley*, 107 Va. 331, 334 (1907) ("It is always necessary, in order to maintain an action for the breach of covenant of warranty, that there shall be an eviction, and . . . sometimes a constructive eviction is sufficient."); *Sheffey's Ex'r v. Gardiner*, 79 Va. 313, 317 (1884) (explaining that in order to maintain an action on a covenant of warranty, "it is not necessary to state or prove a technical eviction"); *Fisher*, 258 F. Supp. 2d at 451–52 ("It has ever been the law of Virginia that a breach of the covenant of warranty, and likewise the covenant of quiet possession, is predicated on an eviction, actual or constructive.").

grantor—courts in other jurisdictions have held that a constructive eviction occurred where a plaintiff purchased title from a third party asserting ownership of disputed property.[8] Like the plaintiffs in those cases who suffered constructive evictions when they attempted to purchase the outstanding hostile title to their property, here, Plaintiff has alleged that Parkway was constructively evicted when RD Group required payment in exchange for executing a corrective deed.

Finally, Defendant argues that RD Group's demand of payment to execute the corrective deed cannot constitute an eviction because RD Group refused to cooperate "out of pique" due to an unrelated dispute with Defendant over a sewer easement, not because RD Group believed it owned the Parkway Property. *See* Dkt. 16-7 at 14. As the June Order already explained, this factual assertion is not properly assessed at the motion to dismiss stage without the benefit of an evidentiary record. Thus, Defendant's argument that the Amended Complaint fails to allege an eviction must be rejected.

### D.

Defendant next argues that Plaintiff's claims should be dismissed because Defendant did not convey the same property in the Parkway Deed as it did in the RD Group Deed. This argument fails because the parties squarely dispute whether the two deeds conveyed overlapping portions of the same property. Indeed, this issue is a question at the heart of the parties' dispute and cannot be appropriately addressed at the motion to dismiss stage without the benefit of an evidentiary record.

---

[8] *See Brewster v. Hines*, 155 W. Va. 302, 313–15 (1971) (holding that the plaintiff adequately pled that a constructive eviction occurred where the plaintiff tried to purchase outstanding hostile title to the plaintiff's property); *Beasley v. Phillips*, 50 N.E. 488, 491 (Ind. App. 1898) (holding that a constructive eviction occurred where the owners of paramount title asserted their claim and threatened suit if the grantee did not purchase their interest, and the grantee in good faith made the purchase to protect his title).

As the June Order explained, Plaintiff adequately alleges that the Parkway Deed conveyed land already conveyed by the RD Group Deed. Plaintiff attached each deed to the Amended Complaint, and Exhibit A of the RD Group Deed contains a metes and bounds description of a plot of land which appears to encompass the land conveyed in the Parkway Deed. Accordingly, Plaintiff's allegation is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Resisting this conclusion, Defendant concedes that Exhibit A of the RD Group Deed was "patently incorrect" and included a description of property conveyed by the Parkway Deed, but Defendant argues that the two deeds nonetheless conveyed separate plots of land because the RD Group Deed referenced "Tax Parcel 38-14H" and the Parkway Deed referenced "Tax Parcel 38-14F." *See* Dkt. 16-7 at 17–18. As explained in the June Order, this argument fails because it is not appropriately addressed at the motion to dismiss stage without a factual record regarding the plots of land and Stafford County's tax parcel designations.[9]

---

[9] Additionally, it is worth noting that, to the extent competing descriptions in the deeds give rise to an ambiguity regarding the land conveyed, the ambiguity must be construed against Defendant as the grantor and drafter of the deeds. *See CNX Gas Co. LLC v. Rasnake*, 287 Va. 163, 167 (2014).

**E.**

Defendant finally argues that Plaintiff's Amended Complaint must be dismissed because Plaintiff, as Parkway's subrogee, is subject to all defenses that Defendant could assert against Parkway. According to Defendant, it may assert five defenses against Plaintiff to defeat Plaintiff's right to collect through subrogation: (1) Parkway breached its agreement of sale with Defendant by not disclosing the title defect and waived its right to do so after closing; (2) Parkway breached the covenant of further assurances in its agreement of sale; (3) Parkway deprived Defendant of Defendant's right to defend Parkway's title under the covenant of special warranty; (4) Parkway tortiously interfered with Defendant's rights under Defendant's agreement of sale with RD Group; and (5) Plaintiff was negligent in searching Parkway's title, which estops Plaintiff from asserting subrogation rights.

The parties agree, and Virginia case law makes clear, that as Parkway's subrogee, Plaintiff is subject to any valid defense that Defendant could assert against Parkway. *See Ohio Cas. Ins. Co. v. State Farm Fire & Cas. Co.*, 262 Va. 238, 241 (2001) ("In a subrogation action, the rights of a subrogated insurer can rise no higher than the rights of its insured."); *see also* 16 Couch on Ins. § 224:180 (3d ed. 2022) ("[A] defendant sued by a subrogated insurer may raise all defenses that would be available had he or she been sued by the insured . . . ."). As explained below, however, Defendant has failed to raise any valid defense against Parkway that may be appropriately addressed at the motion to dismiss stage. For that reason, each of Defendant's subrogation arguments must be rejected at this stage of the litigation.

**1.**

Defendant first argues that Plaintiff has no right of subrogation because Parkway breached its agreement of sale with Defendant by failing to disclose the title defect in the

13

Parkway Deed prior to closing. According to Defendant, Section 6 of the parties' agreement of sale required Parkway to search the title and report any defects or objections to Defendant, and the deed between Defendant and RD Group could have been discovered by the title search. Defendant argues that because Parkway failed to report its title objection under the agreement of sale, Parkway waived its objection to the title and cannot raise it here.

Defendant's argument fails because under Virginia law, the provisions of the sale agreement between Parkway and Defendant were extinguished by the Parkway Deed. Virginia law makes clear that the deed is the "final expression of the agreements between the parties as to 'every subject which it undertakes to deal with,'" and "provisions in a contract for sale are extinguished and merged into the deed" unless they are "collateral to the passage of title and not covered by the deed." *Beck v. Smith*, 260 Va. 452, 455–56 (2000) (quoting *Woodson v. Smith*, 128 Va. 652, 656 (1920)). Agreements are "collateral" and not merged into the deed only if they are "distinct agreements made in connection with the sale of the property, if they do not affect the title to the property, if they are not addressed in the deed, and if they do not conflict with the deed." *Id.* at 456. The Supreme Court of Virginia has explained that such agreements do not merge with the deed because they do not address "a matter with which a title examiner would necessarily be concerned." *Miller v. Reynolds*, 216 Va. 852, 856 (1976).

Here, the doctrine of merger applies and extinguishes Section 6 of the parties' sale agreement. Section 6 required Parkway to search title to the property and report any defects to Defendant. This agreement clearly concerns the title to the property and therefore addresses "a matter with which a title examiner would necessarily be concerned." *Id.* Furthermore, collateral agreements only survive the deed if they are not "addressed in the deed." *Beck*, 260 Va. at 456. The subject matter of Section 6 is clearly addressed in the Parkway Deed, which explicitly states

14

that the conveyance is made subject to conditions "as may appear of record." Dkt. 15-3 at 2. Indeed, Defendant itself notes in its Reply brief that the Parkway Deed "embodied the essence of Section 6." Dkt. 19 at 8. Thus, under Virginia law, Section 6 of the agreement of sale between Parkway and Defendant was extinguished when the parties executed the Parkway Deed.

Seeking to avoid this conclusion, Defendant points to language in the Parkway Deed making the deed subject to all "encumbrances, instruments, liens, covenants, conditions, restrictions, obligations and liabilities as may appear of record." *See* Dkt. 16-7 at 20–21. According to Defendant, this language limits the covenant of special warranty to protect only against anything (a) existing but not of record attributable to the grantor, such as a prior unrecorded deed executed by the grantor; or (b) done by the grantor after the Parkway Deed was executed, such as executing a later deed to someone else. *See* Dkt. 19 at 9. Defendant has not cited any case interpreting similar language in a deed, nor has Defendant cited any case holding that such language may abrogate the covenant of special warranty. And even if Plaintiff may have been able to discover the defect in the RD Group Deed through a title search, Virginia law makes clear that Plaintiff was nonetheless entitled to rely on the covenant in its deed. As the Supreme Court of Virginia has held, "[a]s between the grantor and grantee, the grantee is not required to examine the records, but may rely solely on the covenants in his deed for protection . . . ." *Bossiex*, 154 Va. at 261. Defendant here chose to include a covenant of special warranty in the Parkway Deed and cannot now avoid the very promise of that covenant.

**2.**

Defendant also argues that Parkway breached the covenant of further assurance in Parkway's agreement of sale with Defendant. In this regard, the parties in the agreement of sale agreed:

15

> [T]o perform, execute, and deliver or cause to be performed, executed, and delivered at the Closing or after the Closing any and all such further and reasonable acts, deeds, and assurances as may be reasonably necessary to consummate the transaction contemplated hereby in accordance with this Agreement.

Dkt. 16-7 at 21. According to Defendant, under this provision, Defendant had the right and obligation to take steps to correct any error in the legal description of the property conveyed to Parkway, and Parkway's "precipitate payment" to RD Group prevented Defendant from exercising this right. *Id.*

This argument is not appropriately addressed at the motion to dismiss stage because it raises various factual disputes. For example, although Defendant contends that Parkway precluded Defendant from taking steps to correct the RD Group Deed, Plaintiff's Amended Complaint states that Defendant "refused" to pay the demand by RD Group to correct the title, *see* Dkt. 15 at 4, and Plaintiff's Opposition brief states that Defendant "took the position that RD Group was being difficult to deal with and that [Defendant] would do nothing to remedy the issue," and "acquiesced" to Parkway's decision to pay RD Group's demand. *See* Dkt. 18 at 21. This argument therefore cannot be resolved without an evidentiary record.

### 3.

Defendant next argues that Plaintiff cannot recover as Parkway's subrogee because Parkway deprived Defendant of Defendant's right to defend the title to the Parkway Property. According to Defendant, when Defendant learned of Parkway's concerns about the RD Group Deed, Defendant began taking steps to correct the deed, which Parkway interrupted by making a "voluntary payment" to RD Group. Dkt. 19 at 16. Defendant argues that Parkway should have afforded Defendant an opportunity to defend the title to Parkway's property against RD Group.

Like Defendant's argument that Parkway breached the covenant of further assurances, this argument also raises various factual disputes and thus is not appropriately addressed at the

16

motion to dismiss stage. As stated above, although Defendant claims that it began taking steps to correct the RD Group Deed, Plaintiff alleges in the Amended Complaint that Defendant refused to pay the demand by RD Group to correct the title. Thus, taking the facts alleged by Plaintiff as true, Defendant's argument that Parkway deprived Defendant of Defendant's right to defend Parkway's title must be rejected at this stage.

**4.**

Defendant also argues that Plaintiff is not entitled to subrogation because Parkway tortiously interfered with Defendant's rights under its agreement of sale with RD Group. According to Defendant, it had the right to require RD Group to execute a Deed of Correction under Defendant's agreement of sale with RD Group, and Parkway interfered with this right by paying RD Group's demand. As is true of many of Defendant's other arguments, Defendant's tortious interference argument is not appropriately addressed on a motion to dismiss because it involves disputes of material fact that cannot be resolved without a factual record. Clearly, Defendant's tortious interference argument must await development of an evidentiary record on various issues such as Parkway's knowledge of Defendant's agreement with RD Group and Parkway's intent to disturb that agreement.

**5.**

Finally, Defendant argues that Plaintiff, as Parkway's title insurance company, negligently searched the title to the Parkway Property. According to Defendant, the defect in the RD Group Deed could have been discovered by a competent title search, and Plaintiff's negligence in discovering the defect estops Plaintiff from asserting its subrogation rights in this case.

This argument cannot be resolved at the motion to dismiss stage because it requires

evidence regarding the standard of care in the industry when performing a title exam and whether Plaintiff breached that standard. Although Defendant identifies two cases where courts have refused to permit insurance companies to be subrogated to a claim of their insureds where the insurance company acted negligently, neither of these cases were resolved at the motion to dismiss stage. *See Centreville Car Care, Inc. v. N. Am. Mortg. Co.*, 263 Va. 339, 345 (2002); *Meridian Title Ins. Co. v. Lilly Homes, Inc.*, 735 F. Supp. 182, 186 (E.D. Va. 1990). Defendant might be correct that Plaintiff negligently searched Parkway's title, but it is also possible that Plaintiff performed its title exam within the standard of care and nonetheless failed to discover that Defendant had twice conveyed the Parkway Property. Defendant's negligence argument therefore requires development of an evidentiary record and must be dismissed at this stage in the litigation.

### III.

In conclusion, Plaintiff's Amended Complaint adequately pleads a valid claim for breach of the covenant of special warranty under Virginia law by alleging that (1) Defendant twice conveyed the same plot of land to two different grantees, including Plaintiff's subrogor, and (2) Defendant refused to pay RD Group's demand for payment to execute a corrective deed. Defendant's Motion to Dismiss or for Summary Judgment must therefore be denied.

Alexandria, VA
October 3, 2022

/s/
T. S. Ellis, III
United States District Judge